*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

MICHAEL YALDO,

      Plaintiff-Counterdefendant-Appellee,

UNPUBLISHED
April 1, 2021

v

HOOVER TEN, LLC, and B4 MALIBU, LLC

      Defendants-Counterplaintiffs-
      Appellants.

No. 353449
Macomb Circuit Court
LC No. 2019-004683-CK

Before: O'BRIEN, P.J., and SERVITTO and GLEICHER, JJ.

PER CURIAM.

Defendants appeal as of right the trial court's order denying their motion for summary disposition, granting plaintiff's motion for summary disposition, and dismissing defendants' countercomplaint. We affirm.

On August 29, 2019, plaintiff entered into a purchase agreement with defendants for the purchase of approximately one acre in Warren, Michigan for $615,000. In furtherance of the agreement, plaintiff was required to pay an earnest money deposit to defendants' counsel in the amount of $15,000, which he did. The purchase agreement required seller (defendants) to "immediately proceed with a formal split and survey and city approval at Seller's sole cost and expense." The agreement further provided that plaintiff would have 60 days from the date of the purchase agreement as a due diligence period. In the event plaintiff did not find the premises satisfactory and wanted to terminate the purchase agreement, he could do so within the 60-day due diligence period "by written notice to Seller describing in detail the reasons for the termination, and the Deposit shall be refunded in full termination of this Agreement." If the defendants received no such written notice within the 60-day period, plaintiff waived the right of termination as of the 60th day. The purchase agreement provided that the sale was to be consummated within 30 days after the formal split and after the due diligence period had passed.

Plaintiff initiated the instant action against defendant when, after he paid the required deposit and the due diligence period had passed, he sought to close on the property and defendants refused. Plaintiff claimed that defendants breached the parties' contract and sought a declaratory

-1-

judgment that defendants must apply for and obtain any necessary lot split required by the purchase agreement, as well as deliver any and all documents required by the purchase agreement. Plaintiff also sought specific performance under the purchase agreement. Defendants filed a counterclaim, asserting that plaintiff did not pay the $15,000 deposit,[1] advised defendants that he would not close for the agreed-upon contract price, and improperly filed a notice of lis pendens on the property.

Defendants moved for summary disposition pursuant to MCR 2.116(C)(10), asserting that plaintiff terminated the parties' contract and that he inappropriately filed a notice of lis pendens on the property. Plaintiff moved for summary disposition on his complaint as well as for the dismissal of defendants' countercomplaint, citing MCR 2.116(C)(8), (9), and (10). The trial court denied defendants' motion, granted plaintiff's motion, ordered specific performance of the purchase agreement, and dismissed defendants' countercomplaint. This appeal followed.

On appeal, defendants first contend that the trial court erred in finding that plaintiff did not terminate the parties' contract. Defendants' motion was brought under MCR 2.116(C)(10) while plaintiff's motion was brought under MCR 2.116(C)(8), (9), and (10). "A motion brought under subrule (C)(8) tests the legal sufficiency of the complaint solely on the basis of the pleadings." *Dalley v Dykema Gossett*, 287 Mich App 296, 304; 788 NW2d 679 (2010). "A motion for summary disposition pursuant to MCR 2.116(C)(9) tests the sufficiency of the defendant's pleadings, and is appropriately granted where the defendant has failed to state a valid defense to a claim." *Payne v Farm Bureau Ins*, 263 Mich App 521, 525; 688 NW2d 327 (2004). Because the trial court relied upon facts and evidence outside of the pleadings in ruling on the cross-motions for summary disposition, it clearly based its decision on MCR 2.116(C)(10).

As stated in *Bernardoni v City of Saginaw*, 499 Mich 470, 472–73; 886 NW2d 109 (2016):

We review de novo a trial court's decision regarding a motion for summary disposition to determine if the moving party is entitled to judgment as a matter of law. *Maiden v Rozwood*, 461 Mich 109, 118; 597 NW2d 817 (1999). A motion for summary disposition made under MCR 2.116(C)(10) tests the factual sufficiency of the complaint. *Id.* at 120. The Court considers all affidavits, pleadings, depositions, admissions, and other evidence submitted by the parties in the light most favorable to the party opposing the motion. *Id.*

Questions concerning the proper interpretation of a contract or the legal effect of a contractual clause are also reviewed de novo. *Rory v Contl Ins Co*, 473 Mich 457, 464; 703 NW2d 23 (2005).

As previously indicated, the parties signed the purchase agreement on August 28, 2019, and the agreement provided a 60-day due diligence period to plaintiff. The due diligence period thus expired on October 27, 2019. Documentary evidence establishes that on September 28, 2019,

---

[1] Defendants abandoned this claim when documentary evidence established that plaintiff did, in fact, pay the deposit.

plaintiff engaged in a text conversation with Larry Farida (defendants' representative) wherein plaintiff stated:

> Hello Larry
> Boydspoke to Ron and Mike Coco
> environmental guy far as I understand from
> Mr. Boyd Kraft[2] is getting too complicated let
> me say it so easy and clear because All of
> the setback from the Hoover side and the
> environmental issue I only willing to close this deal for 600 even and zero liability
> with the environmental

Larry responded "I'll pass. But thanks." Plaintiff then responded "No problem."

The primary issue before this Court is the meaning of the above exchange. While defendants assert that the above represents plaintiff's termination of the purchase agreement, plaintiff claims it was only an attempt to renegotiate the price, which, when rejected by defendants, meant that the original purchase agreement terms remained in effect. We find that the text message from plaintiff is, on its face, ambiguous.

Consistent with the purchase agreement termination terms, the text could be considered a writing, it was sent during the 60-day due diligence period, and it states that plaintiff (purchaser) would "only" close on terms different from those set forth in purchase agreement. The text message from plaintiff could thus conceivably be viewed as a termination of the contract. On the other hand, it is questionable whether a text message may serve as a "written notice" and the text language is in broken language and incomplete. Moreover, nowhere in the text message does plaintiff unequivocally say that he wants to terminate the purchase agreement. Rather, plaintiff suggests different terms upon which he wants to close. Resolution thus boils down to the intent of the parties.

While the intent of contracting parties is generally best discerned by the language actually used in the contract, *Rory*, 473 Mich at 469 n 21, there is no language in the contract that assists in our resolution. It is only the September 28, 2109 text message that requires interpretation and application. To undertake this duty, we consider the basic law underlying a motion for summary disposition under MCR 2.116(C)(10).

As stated by our Supreme Court:

In presenting a motion for summary disposition [under MCR 2.116(C)(10)], the moving party has the initial burden of supporting its position by affidavits, depositions, admissions, or other documentary evidence. The burden then shifts to the opposing party to establish that a genuine issue of disputed fact exists. Where the burden of proof at trial on a dispositive issue rests on a nonmoving party, the nonmoving party may not rely on mere allegations or denials in pleadings, but must

---

[2] Boyd Kraft is plaintiff's broker.

go beyond the pleadings to set forth specific facts showing that a genuine issue of material fact exists. If the opposing party fails to present documentary evidence establishing the existence of a material factual dispute, the motion is properly granted. [*Quinto v Cross & Peters Co*, 451 Mich 358, 362–63; 547 NW2d 314, 317 (1996) (internal citations omitted)]

Both parties moved for summary disposition in their favor under MCR 2.116(C)(10). In support of their motion, defendants presented only the September 28, 2019 text exchange between the parties, and email correspondence between plaintiff and PM Environmental, Inc. discussing an environmental assessment of the property. As admitted by defendants, "it is unclear whether [plaintiff] actually retained PM Environmental, Inc., to perform an assessment and remediation of the Property." Defendants relied primarily upon the same in response to plaintiff's motion for summary disposition.

Plaintiff, on the other hand provided evidence that he did not intend for the text message to terminate the purchase agreement. After plaintiff sent the September 28, 2019 text message, he hired an architect for the subject property. In an October 15, 2019 email from plaintiff's broker to defendants' representative (their transactional attorney), the broker provided a copy of a revised site plan, floor plan, and elevations for the subject property, prepared by an architect. On October 24, 2019 (within the due diligence period), plaintiff's broker sent an email to defendants' broker (and copying defendants' transactional attorney) stating that plaintiff would like a copy of an approved split of the property, as written in the purchase agreement, that plaintiff was prepared to close within 30 days, and that plaintiff would be willing to close immediately if defendants did not want to wait 30 days and would be willing to reduce the price. Apparently, plaintiff received no response. Plaintiff thereafter sent a text message to defendants on November 4, 2019 (one week after the due diligence period closed), stating that:

> After 60 days of hiring an architect paying fees for environmental work making appointments going back-and-forth with the broker hired contractor and builders now I am ready to close within the next 2 to 3 weeks would like to know when do you want to set up the closing so we can move forward please advise thank you

On the same date, plaintiff's broker sent an email to defendants' transactional attorney and the property owner stating, "To all. Purchaser is ready to close this transaction, he is still awaiting the city of Warren's approved property split per the purchase agreement, please notify [] date and time."

All of plaintiff's actions and documentation support that plaintiff did not view the text as a termination of the contract. In addition, at the hearing, the trial court noted that the "due diligence provision" in the purchase agreement provided that if written notice with of an intent to terminate the contract was sent to defendants within the 60-day due diligence period, "the Deposit shall be refunded in full termination of this Agreement." Defendants did not return plaintiff's $15,000 deposit after receiving the September 28, 2019 text message. In fact, at the time of the March 2,

2020 hearing, defendants had still not returned the deposit to plaintiff. The deposit was being held in escrow by a title company, and it appears that defendants at no time advised the title company that the purchase agreement was terminated. This suggests that defendants also did not deem the September 28, 2109 text as a termination of the purchase agreement.

Moreover, plaintiff submitted documentation that raises questions about defendants' intent to abide by the purchase agreement from the start. For example, despite the provision in the purchase agreement requiring defendants to "immediately proceed with formal split and survey," it never did so. In addition, while defendants sent a letter to plaintiff stating that plaintiff had cancelled and terminated the purchase agreement and it was thus null and void, defendants misrepresented the date on which the letter was sent. The letter bears the date of November 5, 2019, and indicates it was sent via overnight delivery. While a label for the letter was generated on that date, the postal tracking for the letter establishes that it was not provided to UPS for overnight delivery until November 21, 2019. It was delivered to plaintiff the next day.

In any event, because the language in the text was unclear on its face as to whether it was intended to terminate the purchase agreement, because plaintiff undertook actions after the September 28, 2109 text indicating his belief that the purchase agreement was still in effect, and because defendant undertook various actions after the text was sent that could be viewed as their belief that the purchase agreement was still in effect, the text message was ambiguous. Plaintiff thereafter supported its position with ample documentary evidence and defendants provided no evidence establishing the existence of a material question of fact concerning whether plaintiff intended to and did terminate the purchase agreement. The trial court thus properly granted summary disposition in favor of plaintiff and dismissed defendants' countercomplaint.

While defendants also, in their reply brief contend that specific performance of the purchase agreement was not the proper remedy, they do so principally because they argue that plaintiff did not support his position and his intent was thus a question of fact, which this Court has already rejected. And, specific performance was a proper remedy.

The power to grant specific performance rests within the sound discretion of the court and specific performance of a contract for the purchase of real estate should be granted in the absence of some showing that to do so would be inequitable; a court is not justified in withholding a decree for specific performance merely because of the exigencies of a case. *Zurcher v Herveat*, 238 Mich App 267, 300; 605 NW2d 329 (1999), quoting *Foshee v Krum*, 332 Mich 636, 643; 52 NW2d 358 (1952) (internal citations omitted). All material terms of the purchase agreement relevant to the identification of the property, parties, and consideration are clear and unequivocal on the face of the purchase agreement. See, *Zurcher*, 238 Mich App at 293. And, because real property is unique, and plaintiff timely asserted his willingness and ability to purchase the property, specific performance is the proper remedy in this case. *In re Smith Tr*, 480 Mich 19, 20–21; 745 NW2d

754 (2008).[3]

Affirmed.

/s/ Colleen A. O'Brien
/s/ Deborah A. Servitto
/s/ Elizabeth L. Gleicher

---

[3] Defendant listed, as an additional argument in its "Issues," that the trial court erred in finding that defendants' failure to return plaintiff's deposit precluded a finding that plaintiff terminated the purchase agreement. However, defendants do not address this issue in any way in the body of their appeal brief and we thus not consider it. A party may not, on appeal, simply announce a position or assert an error and then "leave it up to this Court to discover and rationalize the basis for his claims, or unravel and elaborate for him his arguments, and then search for authority either to sustain or reject his position." *Wilson v Taylor*, 457 Mich 232, 243; 577 NW2d 100 (1998). "An appellant's failure to properly address the merits of his assertion of error constitutes abandonment of the issue." *Thompson v Thompson*, 261 Mich App 353, 356; 683 NW2d 250 (2004).